# COURT OF OYER AND TERMINER.

THE STATE vs. WILLIAM E. EVANS.

Sussex County, April Term, 1893.

**Homicide.**—If a person put poison in a well, with intent to murder and thereby cause the death of one who drank the water, the verdict must necessarily be guilty of murder of the first degree or acquittal; there is no intermediate ground.

**Malice.**—The wilful preparation and giving of poison to a human being constitutes express malice aforethought.

**Evidence, Circumstantial.**--Because the evidence of a homicide is circumstantial, it is none the less effective, if consistent, connected and unbroken in material points.

**Same.**—Circumstantial evidence is the inference of a fact from other facts proved, and the facts thus inferred and assented to by the mind are said to be presumed, that is to say, taken for granted until the contrary is proved.

**Reasonable Doubt.**—Proof beyond reasonable doubt is such evidence as establishes the truth of the facts to a reasonable and moral certainty, which convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it.

**Affidavits. Witnesses of Indigent Persons.**—Affidavits of indigent persons for witnesses in criminal cases must be read in open court. They need not set out in detail the evidence, but simply the nature of it.

This was an indictment for murder by putting poison into a well. At the April Term, 1893, after the indictment was found

and returned, *Richards*, for the defendant, asked the court whether or not it was necessary in making affidavit to certain facts upon which to base a petition for the State to pay the fees of certain witnesses for the defense in a case, that the petition should be read in open court, or should it merely be brought to the knowledge of the judges, as is the case when a similar petition is presented to a judge in vacation.

*Nicholson*, Attorney General, for the State.

Lore, C. J., announced the decision as follows: The Court have considered the suggestion of counsel and the construction of the Act of April, 1881, which provides that the State, in certain cases, may pay the expense of witnesses for the defence, and while it does not come before us formally, and we do not desire that this may establish a precedent, yet we are willing to express our judgment of the effect of that statute.

We think the suggestion made that the petition may be presented to a judge in vacation, as well as in Court, does not change the character of the petition at all, but the former method is pursued for the purpose of facilitating business, but the paper itself is a part of the record and a public document. I remember very well in New Castle County that in every case, I think, the petition has been read in open Court, and the State, represented by the Attorney General, had the opportunity to observe, for instance, that the evidence was not material, or that the affidavit was not in proper form, etc. You are not bound to set forth in detail your evidence, but simply the nature of it, broadly and fully enough in it, however, to inform the Court and the Attorney General what you propose to prove, but not your matter of proof.

We think, therefore, that it must be subject to the inspection of the Attorney General and read in open Court. There is but one class of affidavits that are not public, that is such as affidavits of demand. With that exception I know of no affidavit which can

be made that is not a part of the record and must be read in open Court.

The case came on to be tried at the same term. The evidence which was circumstantial consisted mainly, on the part of the State, of proof tending to show that the defendant who then resided at Tacony in the State of Pennsylvania had been on the 4th of August, 1892, in and about the neighborhood of the farm of his brother-in-law, John Rosser, near Oak Grove, in Seaford Hundred, Sussex County. Rosser and his wife were on that day absent attending camp-meeting, and on their return at midnight there were indications that something was wrong about the water of the well which attracted attention, but on the following morning the peculiar appearance of the water had disappeared and it was clear. Subsequently, the water being used freely, all the persons residing in the house became ill, the symptoms being such as would naturally indicate that they had taken into the stomach some corrosive poison, and an infant child, Raymond Rosser, after being ill from Friday, August 5th, died at midnight of the following Tuesday. All the animals on and about the place which drank the same water were similarly affected. The case of the State was that the poison was the result of putting into the well arsenic or some preparation thereof, while the theory of the defence was that the poison, if any, was occasioned by Paris green which had been about the house. There was medical testimony to the effect that the child died from arsenical poisoning and experts were examined to show what would have been the effect of putting into the well both arsenic and Paris green. The testimony of Dr. Harlan Wallace and Dr. Theodore R. Wolf, who were examined as experts, was to the effect that upon analysis the water gave indications of the presence of arsenic.

The prisoner's wife was the sister of John Rosser, whose well was poisoned. They had lived together in Maryland several years and he had left her twice to look for work and finally had left her not to return. There was testimony to the effect that he had com-

municated with her through the mail, asking her to return and live with him, and the theory of the State was based upon the idea that his attempts against the life of Mr. and Mrs. Rosser were prompted by the prisoner's feelings towards them in consequence of their attitude with respect to the differences between himself and his wife.

There was also evidence that, when the prisoner's name was connected by rumor with the poisoning, he had sought to induce the people with whom he was living to make false statements respecting his whereabouts on the day in question. The defence introduced evidence to prove an alibi.

*Nicholson*, Attorney General, and *Giles*, Deputy Attorney General, asked the Court to instruct the jury:

1. An admission by the defendant of an implicating fact, as the purchase and possession of poison, dispenses with proof of that fact. Wharton, Cr. Ev. § 623.

2. An alibi is at once a negation of the defendant's presence at a particuliar spot at a particular time and an affirmation of his presence at another place at the same time; and where a defendant has set up an alibi by a witness, his statement that at the time testified to by that witness he was at any other place than that described by his witness must be taken by the jury as a contradiction of the alibi set up by that witness, even though other evidence in the case should satisfy their minds that he was not at the time at the place he claims to be.

3. Declarations made by a defendant in his own favor, unless part of the *res gestae* or of a confession offered by the prosecution are not admissible for the defence, and when so admitted their weight is for the jury, and they can be disproved by the prosecution; Wharton, Crim. Ev. §§ 690, 694.

4. The credibility of an impeached witness is for the jury alone, subject to the direction and guidance of the Court.

5. If any man lay poison for a particular person and another

person finds and takes the same and dies therefrom it is murder in the person laying it.

6. In the case of death by poisoning it is sufficient if the jury are satisfied from all the circumstances, and beyond a reasonable doubt, that the death was caused by poison administered by the prisoner, and upon that point the material questions are: Whether the prisoner had any motive in poisoning the deceased; whether he had the opportunity of administering the poison; and whether he had poison in his possession, or power to administer it. With these inquiries every part of the prisoner's conduct and language in relation to the subject are material parts of the *res gestae* and are admissible in evidence.

7. Circumstantial evidence is in the abstract, nearly, though perhaps not altogether, as strong as positive evidence. In the concrete it may be infinitely stronger. All evidence is more or less circumstantial, the difference being only in the degree; and it is sufficient for the purpose when it excludes disbelief—that is, actual, not technical, disbelief, for he who has to pass on the question is not at liberty to disbelieve as a juror while he believes as a man by reason of the evidence. It is enough if his conscience is clear; *Commonwealth vs. Harmon*, 4 Barr. 269; s. c., Wharton, Cr. Ev. § 10, note.

8. If the conclusion to which the jury are conducted be that there is that degree of certainty in the case that they would act upon it in their own grave and important concerns, that is the degree of certainty which the law requires, and which will justify you in returning a verdict of guilty. *Regina vs. Manning and wife*, Crown cases in Wills on Circumstantial Evidence.

*Richards*, for the defendant.

(1) Where a judicial confession made by the accused is produced in evidence on the part of the State, the jury are to consider the whole of the confession and weigh the whole of it, and all parts of it are entitled to equal weight. *State vs. West*, 1 Houst. Cr. Cas. 371.

(2) Where a witness produced on the part of the State is impeached by the defence and no evidence in support is proffered by the State, the evidence of such a witness, if the jury believe the impeaching witnesses, is not to be considered by them in arriving at their verdict.

(3) The admission by the defendant of any fact which is no part of the *res gestœ*, cannot be considered an implicating fact. Wharton, Crim. Ev. § 623.

(4) The prisoner is entitled to any reasonable doubt in the minds of the jury.

LORE, C. J., (charging the jury.)

On the night of Thursday, August 4th, 1892, John Rosser and Emma Rosser, his wife, returning from camp-meeting at midnight to their home near Oak Grove, in Seaford Hundred, in this County, found the surface of the water in the well, which water was used for the family to drink, for culinary purposes, and for watering the stock, covered with a white substance which aroused their suspicion. Next morning this had disappeared and the water seemed clear as usual. Suspicion was then allayed, and the water used freely by John Rosser, his wife Emma, their infant son Raymond Rosser and Nellie Rosser, who was visiting there. The water was also used for the horse, the cows and the pigs. From the use of the water the horse was disabled, two cows died, the pigs refused to eat, Nellie Rosser, John Rosser and his wife Emma became sick with violent pains, cramps, vomiting and burning thirst, and some of them were in bed for from two to three weeks. Raymond Rosser, the eighteen months old infant, was sick in like manner from Friday until midnight of the following Tuesday, when he died.

It is claimed on the part of the State that this well of water was poisoned, and that William E. Evans, the prisoner at the bar, put such quantities of arsenic in the well on the night of August 4th as to cause the results above described. He is, therefore, indicted for the crime of murder of the first degree, being the highest grade of homicide.

Charge.

The indictment contains three counts. The first count charges the intent to kill John Rosser; the second the intent to kill John Rosser and the actual killing of Raymond Rosser; the third count charges the intent to murder generally.

In considering this matter the Court is relieved from any necessity of explaining to you the different grades and degrees of homicide. The wilful preparation and giving of poison to a human being constitutes express malice aforethought of the clearest character. It is one of the commonest examples used in the text books.

We therefore say to you that William E. Evans, the prisoner, is guilty of murder of the first degree or he must be acquitted. There is no intermediate ground. Therefore if you believe that William E. Evans put the poison in the well, from drinking the water of which Raymond Rosser died, he is guilty of murder of the first degree in manner and form as he stands indicted.

This is equally true if he put the poison in the well to poison John Rosser, although John Rosser was not killed and his son Raymond Rosser was killed. The crime is measured by what he intended as against John Rosser and as if he had accomplished that intention.

It is incumbent upon the State in this case to prove, 1, that the water in the well was poisoned; 2, that Raymond Rosser died. from drinking that poisoned water; 3, that William E. Evans put that poison in the well.

In determining this question, gentlemen, you are the sole judges of the facts. With these facts the Court has nothing to do. Our only duty is to state the principles of law governing the case to aid you in the intelligent use of the evidence, and to enable you to arrive at a right verdict.

This is a case of purely circumstantial evidence. No witness has been produced who saw the poison put into the well, but a number of circumstances have been shown, which together, it is claimed, fix the guilt upon the prisoner.

Because the evidence is circumstantial it is none the less

effective if consistent, connected, and unbroken in material points. Indeed vice and crime hide themselves in darkness and subtly cover their tracks by every human cunning and device. Often therefore you must trace it step by step and by cumulative circumstances uncover its dark ways.

In terse language the late Chief Justice Gilpin, in *State vs. Goldsborough*, 1 Houston's Criminal Reports 314-16, thus gives the necessity and scope of circumstantial evidence:

"But circumstantial or presumptive evidence is receivable in both civil and criminal cases. The affairs and business of the world could not well be carried on without recognizing the admissibility of this description of evidence. In criminal matters the necessity of admitting it is indeed much more manifest than in civil matters. Crime usually seeks secresy, and the possibility of proving the offence charged by direct or positive evidence is much more rare and difficult in criminal cases than in civil cases. Circumstantial or presumptive evidence is where some facts being proved, another fact follows as a natural or very probable conclusion from the facts actually proved, so as readily to gain the assent of the mind from the mere probability of its having actually occurred. It is the inference of a fact from other facts proved, and the fact thus inferred and assented to by the mind is said to be presumed, that is to say, it is taken for granted until the contrary is proved. And this is what is called circumstantial or presumptive evidence, and it is adopted the more readily in proportion to the difficulty of proving the fact by direct evidence and the obvious ease with which it can be disproved or with which other facts can be proved, which are inconsistent with it, if it never really occurred.

"In capital felonies, such as murder, where the proof is of a circumstantial character, it is quite usual to declaim against circumstantial evidence and to denounce and reprobate conviction founded upon such evidence; and yet, the universal experience of those engaged in the administration of justice shows the absolute necessity of admitting it and relying on it, in forming our conclusions in re-

gard to the guilt or innocence of the accused persons. Indeed, if courts of justice were to exclude circumstantial evidence, the great majority of criminals would escape the just penalty of their crimes. They would go unwhipped of justice, and be turned loose upon the community to commit other crimes. But whilst I say this I also say to you most emphatically, that circumstantial evidence, to warrant a conviction must be entirely satisfactory and of such significance, consistency, and force, as to produce conviction in the minds of the jury, of the guilt of the accused beyond a reasonable doubt. The great rule on this subject is this : That where the evidence is circumstantial, the jury must be fully satisfied, not only that those circumstances are consistent with the prisoner's having committed the act charged as constituting the crime, but they must also be satisfied that the facts are such as to be inconsistent with any other rational conclusion than that the prisoner was the party. They must be such as to exclude any other hypothesis or conclusion."

Of the circumstances and facts, proved by the witnesses in this case, as well as the credit to be given to each witness, you are the sole judges. You saw the witnesses, heard their testimony, saw their demeanor on the stand, and bearing all these in memory must give to all just such weight, as in your intelligent consideration they should have. You should be governed exclusively by the evidence in this case, and only by what you have heard and seen in this trial in this court room, and from no other sources whatever.

The degree or quantity of evidence necessary to justify a verdict in criminal cases differs from that in civil cases. The distinction is clearly defined in the Goldsborough case just cited (p. 316-17):

" In civil cases it is the duty of the jury to weigh the evidence carefully, and to find for the party in whose favor it preponderates, although it may not be free from reasonable doubt. But in criminal trials the party accused is entitled to the benefit of the legal presumption in favor of innocence, which in doubtful cases is always sufficient to turn the scale in his favor. It is, therefore, a rule of criminal law that the guilt of the accused must be fully proved, and neither a preponderance of evidence nor any weight of preponderat-

ing evidence is sufficient, unless it produces full belief of the fact to the exclusion of all reasonable doubt in the mind of the jury.   But that does not import in contemplation of law a mere possible doubt; because everything relating to human affairs and depending on moral evidence, is open to some possible or imaginary doubt.   It is that state of the case which after entire comparison and consideration of all the evidence leaves the mind of the jurors in that condition that they cannot feel any abiding conviction to a moral certainty of the truth of the charge.   The burden of proof is on the prosecutor. All the presumtions of law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent of the offence charged until he is proved to be guilty.   If, upon such proof there is reasonable doubt remaining, the accused is entitled to the benefit of it by acquittal, for it is not sufficient to establish a proba- bility, though a strong one, arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary, but the evidence must establish the truth of the facts to a reasonable and moral certainty; a certainty that convinces and directs the un- derstanding, and satisfies the reason and judgment of those who are bound to act conscientiously upon it.   This we take to be proof beyond reasonable doubt."

If, therefore, gentlemen of the jury, from the evidence in this cause you entertain such a reasonable doubt of the guilt of William E. Evans, you verdict should be not guilty, otherwise your verdict should be guilty in manner and form as he stands indicted.

*Verdict not guilty.*